**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ASCENSION INTELLECTUAL PROPERTIES, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 6:21-cv-00859 |
| AMP ME, INC., | § § | JURY TRIAL DEMANDED |
| | § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Ascension Intellectual Properties, LLC, by and through its undersigned counsel, hereby brings this action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*. and makes the following allegations of patent infringement relating to U.S. Patent Nos. 9,501,760 (the "'760 Patent"); 9,788,180 (the "'180 Patent"); 10,292,022 (the "'022 Patent"); and 10,701,530 (the "'530 Patent") (collectively, the "Media Echoing Patents" or "Asserted Patents") against Amp Me, Inc.:

## PARTIES

1.      Ascension Intellectual Properties, LLC ("Ascension" or "Plaintiff") is a Texas limited liability company with its principal place of business in Prosper, Texas.

2.      Defendant Amp Me, Inc. ("Amp Me" or "Defendant") is a corporation organized and existing under the laws of Canada and has a registered place of business at 1260 Boulevard Robert-Bourassa West Suite 300 Montreal, Quebec, H3B 3B9, Canada.

**JURISDICTION AND VENUE**

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 United States Code.

4.      The Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338.

5.      Venue is proper under 28 U.S.C. § 1391(c)(3) and *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018) because Defendant is a foreign corporation.

6.      This Court has personal jurisdiction over Defendant because it has continuous and systematic business contacts with the State of Texas.  Defendant, directly and through subsidiaries or intermediaries (including distributors, retailers, and licensing partners), conducts business extensively throughout Texas, by shipping distributing, making, using, offering for sale, selling, licensing, transmitting (including through its website and mobile applications) its products and services in the state of Texas and the Western District of Texas.  Defendant has purposefully placed its products into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this state and this district.  Defendant has used and continues to use and sell its infringing products within this district and has committed regular acts of direct infringement in this district.  Defendant's contacts with the State of Texas and this district are so pervasive such that this Court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

**FACTS**

7.      Ascension's Media Echoing Patents cover important inventions relating to enabling mobile device users to play the same digital media content concurrently (echoing) on their respective devices in a synchronized fashion. In particular, Ascension's Media Echoing Patents involve solving problems in the prior art that were associated with synchronized playback of media. Ascension's Media Echoing Patents provide solutions to these and other problems to

improve what otherwise resulted in an undesirable user experience.

**A.      Nature of The Action**

8.      Ascension alleges that Defendant has directly infringed and continues to directly infringe its Media Echoing Patents.

9.      Ascension alleges that Defendant has induced infringement of the Media Echoing Patents by, at least, the end users of its application.

**B.      The Media Echoing Patents**

10.     Ascension owns by assignment the entire right, title, and interest in the Media Echoing Patents including the right to sue for past infringement.

11.     A true and correct copy of the '760 Patent entitled "Media echoing and social networking device and method" is attached as Exhibit A to this Complaint.

12.     A true and correct copy of the '180 Patent entitled "Media echoing and social networking device and method" is attached as Exhibit B to this Complaint.

13.     A true and correct copy of the '022 Patent entitled "Media echoing and social networking device and method" is attached as Exhibit C to this Complaint.

14.     A true and correct copy of the '530 Patent entitled "Media echoing and social networking device and method" is attached as Exhibit D to this Complaint.

15.     After full and fair examinations, the U.S. Patent and Trademark Office ("USPTO") granted the '760 Patent on June 21, 2016, the '180 Patent on October 10, 2017, the '022 Patent on May 14, 2019, and the '530 Patent on June 30, 2020.

16.     The '760 Patent is both valid and enforceable.

17.     The '180 Patent is both valid and enforceable.

18.     The '022 Patent is both valid and enforceable.

19.     The '530 Patent is both valid and enforceable.

20.     The Media Echoing Patents relate generally to the field of media echoing and social networking methods and devices, for use with mobile systems.

21.     Media providers, such as Pandora, Google Play, and Spotify, Ltd., comprise a centralized recording medium that allows listeners to wirelessly stream music on mobile devices where users can choose to display their music selections on social networking websites and share music with social media "friends" who also subscribe to the media provider.

22.     Among other things, the Media Echoing Patents provide for methods and systems capable of allowing users to designate a geographic area within which a list of identifiers of other users playing media can be displayed on a user's device, such that the user can select to play (i.e., stream) the same media as one or more of the listed other users. Accordingly, the user can network with previously unknown people, based on a common taste in music, for example.

## C.     The Accused Products

23.     Defendant through its AmpMe App software and services (including its VIP Services) (collectively "Accused Products") infringe Ascension's Media Echoing Patents. Defendant's AmpMe App provides that its users can "amplify the sound of their music by connecting several devices (both iOS and Android) to play the same music at the same time." *See* https://www.ampme.com/faq. The AmpMe App allows the user to either create a digital content streaming "Party" or to choose to join another user's "Party" and to echo (i.e., synchronize) the audio of their respective devices. Additionally, the AmpMe App keeps track of the number of users currently echoing the content.  Furthermore, the AmpMe App uses the users' device's location data in order to detect other nearby devices and/or share the Party's location with other users of the App.

24.     Defendant's AmpMe App is distributed across several mobile platforms including through the Apple Store at https://apps.apple.com/app/apple-store/id986905979 for iPhone and

iPad styled as "AmpMe – Speaker & Music Sync" and through Google Play for Android devices at https://play.google.com/store/apps/details?id=com.amp.android styled as "AmpMe - Speaker Booster."

25.     Defendant's AmpMe App has been downloaded and installed from Google Play over 10 million times. *See id*.

26.     Upon information and belief, due to these and other aspects of the AmpMe App and services, Defendant has and continues to infringe the Media Echoing Patents as described in the Counts below.

**CAUSES OF ACTION**

**COUNT I: INFRINGEMENT OF THE '760 PATENT**

27.     Ascension realleges and incorporates by reference the allegations set forth above as if set forth verbatim herein.

**A.     Direct Infringement**

28.     Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's AmpMe App or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '760 Patent.

29.     Defendant operates the Internet site https://www.ampme.com/ ("Amp Me Site"). The Amp Me Site is targeted to and accessible to Texas residents.

30.     Defendant offers to its customers mobile applications, for example, mobile applications available on Android, iPhone, Windows, and Mac devices (all versions collectively referred to as the "AmpMe App"). The AmpMe App is targeted to and accessible to Texas residents. An exemplary screenshot of the Amp Me App offer to consumers is provided below:



**Figure 1**[1]

31.     Upon information and belief, Defendant has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '760 Patent by making, using, selling, offering for sale, importing and/or licensing in the United States without authority systems, products, and methods claimed by the '760 Patent, to wit, the AmpMe App.

32.     Upon information and belief, and as one illustration without limitation, Defendant infringes Claim 1 of the '760 Patent in the exemplary manners described below.

33.     Defendant's AmpMe App and services (e.g., Amp Me's "VIP Services"), use a method of echoing media via a mobile device that allows "users to amplify the sound of their music by connecting several devices . . . to play the same music at the same time."[2]  In particular, the AmpMe App is operable across several mobile device platforms (including both Apple iOS and Android platforms) allowing a user to either create a digital content streaming "Party" or to choose to join another user's "Party" and to echo (i.e., synchronize or "sync up") the audio of their respective devices.[3]

---

[1] https://www.ampme.com/
[2] https://www.ampme.com/faq
[3] *Id.*



**Figure 2**[4]

34.     In Figures 2-3 Amp Me advertises that the AmpMe App allows mobile users to echo (i.e., "sync up" content).



**Figure 3**[5]

35.     In particular, the AmpMe App allows users to "Stream music or videos from YouTube, Spotify, Deezer, SoundCloud or your own Music Library, to sync phones and play the same music or video at the same time on multiple devices."[6]

---

[4] https://apps.apple.com/us/app/ampme-speaker-bass-booster/id986905979
[5] https://play.google.com/store/apps/details?id=com.amp.android
[6] *Id*.

36.     AmpMe directs its customers to "[s]ign in with Facebook or Google to connect with friends, follow their profiles and get notified when they start a party. That way you can roast their song choice in the chat, and suggest a new track."[7]

How to:

1 - Download AmpMe on your Android device.

2 - Start your own party via Youtube, Spotify, SoundCloud, or your music library or join a party nearby or Live Party if you don't feel like being the host.

3 - Everyone in the party now will be able to listen to the same music and watch the same video at the same time. 🙌

4 - If you started the party, you're the DJ and can control what everyone else is listening to. Guests can also add songs in a party - that's if you want them to.

5 - Chat with friends and react to the music in the party

**Figure 4**[8]

37.     Through the AmpMe App and Services a user's mobile device displays "respective identifiers of one or more other users experiencing respective media" from a predefined "geographic area".   For instance, Figure 5 shows a screenshot of the AmpMe App displaying "Global Live Parties" and "Nearby Parties" that display other users with their associated identifiers in the form of usernames and profile pictures.

---

[7] *Id*.
[8] *Id*.



**Figure 5**[9]

38.     The AmpMe App "can use the device's location to detect other nearby devices if those devices are connected to the same Wi-Fi Network or if the devices' own Internet connections are to be used: AmpMe may consume cellular data if all the devices are not connected to the same Wi-Fi network."[10]  A user can "turn on locations services and find a party near you."[11]

39.     Additionally, the AmpMe App keeps track of the number of users currently echoing the content. An icon shows the number of users listening "live" to another user. *See* Fig. 5.

40.     Further, the AmpMe App uses the users' device's location data in order to detect other nearby devices and/or share the Party's location with other users of the Application. The AmpMe App uses a predefined geographic area e.g., a "rough geo-location" or "course location". *See* Fig. 6.

---

[9] https://ampmeappdownload.com/ampme-for-macbook/
[10] https://whatsyourtech.ca/2019/02/11/canadian-developers-amped-over-music-sync-app/
[11] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788



**Figure 6**[12]

41.     Furthermore, users may also select various communication modes using Wi-Fi, Bluetooth, and NFC which define geographic areas.



**Figure 7**[13]

42.     Indicating when the user has selected to play respective media initiated by a second user to "receive" and "transmit" a signal, AmpMe uses centralized network control, i.e., a server, to control distribution of the content stream such that another user can watch a broadcast.   The AmpMe App's broadcast feature requires centralized network control, such as a server, to control

---

[12] https://www.ampme.com/privacy (accessed 8/6/2021).
[13] https://www.androidpolice.com/wp-content/uploads/2015/09/nexus2cee_ampme-host-party-6-329x585.png

distribution of the content stream.  The App or web client interfaces to the server to request joining a "party" broadcast.



**Figure 8**[14]

43.      The "respective media initiated by a second user" in Figure 8 shows a user broadcasting live. A user selecting which broadcast feed (i.e., "party") to join and watch from the AmpMe App causes a signal from the centralized server to be transmitted to a second user. For example, in the screenshot shown in Figure 8 above, the "respective media initiated by a second user" shows the second user broadcasting "China Marie" live.

44.      Multiple "changeable identifier[s] of the user of the mobile device, provided by the user of the mobile device" are shown in Figure 8 in the form of the usernames (e.g.

---

[14] https://play.google.com/store/apps/details?id=com.amp.android

"noelani_tsunami") and corresponding profile pictures.

45.    As seen in Figure 8, the AmpMe App shows that when a user joins a party (i.e., "upon receiving a signal at a centralized server indicating that the user has selected to play respective media initiated by a second user"), it displays such user's username and photo, i.e., "transmitting a signal from the centralized server to the second user to automatically display to the second user a changeable identifier of the user of the mobile device."

46.    The AmpMe App provides that a user may stream a user generated list of media (e.g., music) and other users join a selected live broadcast synchronized in real time,[15] i.e., "the respective media is experienced such that the respective media is synchronized in real time with the respective media experienced by the second user."

47.    Defendant's infringing activities were and are without authority or license under the '760 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '760 Patent under at least 35 U.S.C. § 271(a) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the Accused Products without authority.

**B.    Vicarious and Induced Infringement**

48.    Defendant had actual knowledge of infringement as of July 9, 2021 when Plaintiff sent a copy of the '760 Patent along with claim charts and cited references detailing Defendant's infringement to Martin-Luc Archambault CEO of Amp Me to Amp Me's place of business at 1260 Boulevard Robert-Bourassa West Suite 300 Montreal, Quebec, H3B 3B9, Canada and via both registered mail and email at martin-luc@ampme.com.

49.    Further, the service of this Complaint, detailing Defendant's infringement of the

---

[15] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788; https://www.ampme.com/faq ("Play your music in perfect sync across multiple devices"); https://www.ampme.com/terms ("the App on your device synchronizes with devices of other AmpMe users").

'760 Patent in conjunction with the references cited, constitutes actual knowledge of infringement as alleged here.

50.     Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '760 Patent. On information and belief, Defendant has also continued to sell the Accused Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '760 Patent. *See* above (extensively demonstrating how Defendant directs end users to commit patent infringement).

51.     Further, to the extent that Defendant has assigned performance of these steps to third parties, such as its customers, agents or contractors, the third parties act vicariously as agents of the Defendant, or form a joint enterprise with Defendant, to infringe at least Claim 1 of the '760 Patent.  Alternatively, the Defendant contracts with the third parties to perform the infringing steps. Defendant profits vicariously from third party infringement, condition the third parties' participation and receipt of benefits of the AmpMe App on the performance on the infringing activity and further establish the respective timing and manner of the third parties' performance of the infringing activity.

52.     Defendant's infringing activities were without authority or license under the '760 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '760 Patent under at least 35 U.S.C. § 271(b) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the AmpMe App without authority.

## COUNT II: INFRINGEMENT OF THE '180 PATENT

53.     Ascension realleges and incorporates by reference the allegations set forth above as if set forth verbatim herein.

**A.      Direct Infringement**

54.     Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's AmpMe App or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '180 Patent.

55.     Defendant operates the Internet site https://www.ampme.com/ ("Amp Me Site"). The Amp Me Site is targeted to and accessible to Texas residents.

56.     Defendant offers to its customers mobile applications, for example, mobile applications available on Android and iPhone products (i.e., the AmpMe App). The AmpMe App is targeted to and accessible to Texas residents. *See*, *supra*, Fig. 1.

57.     Upon information and belief, Defendant has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '180 Patent by making, using, selling, offering for sale, importing and/or licensing in the United States without authority systems, products, and methods claimed by the '180 Patent, to wit, the AmpMe App.

58.     Upon information and belief, and as one illustration without limitation, Defendant infringes Claim 1 of the '180 Patent in the exemplary manners described below.

59.     Defendant's AmpMe App and services (e.g., Amp Me's "VIP Services"), use a method of echoing media via a mobile device that allows "users to amplify the sound of their music by connecting several devices . . . to play the same music at the same time."  In particular, the AmpMe App is operable across several mobile device platforms (including both Apple iOS and Android platforms) allowing a user to either create a digital content streaming "Party" or to choose

to join another user's "Party" and to echo (i.e., synchronize or "sync up") the audio of their respective devices. *See*, *supra*, Fig. 2.

60.     Through the AmpMe App and services a user's mobile device displays "respective identifiers of one or more other users experiencing respective media" from a selectable "geographic area".  *See*, *supra*, Fig. 5. For instance, Figure 5 shows a screenshot of the AmpMe App displaying "Global Live Parties" and "Nearby Parties" that display other users with their associated identifiers in the form of usernames and profile pictures.

61.     The AmpMe App "can use the device's location to detect other nearby devices if those devices are connected to the same Wi-Fi Network or if the devices' own Internet connections are to be used: AmpMe may consume cellular data if all the devices are not connected to the same Wi-Fi network."[16]  A user is directed and encouraged to "turn on locations services and find a party near you."[17]

62.     The AmpMe App also displays "a number corresponding, respectively, to each of the one or more other users, wherein the number is alterable at least in part when one experiences respective media in real time while each of the one or more other users currently experiences the respective media," with an icon displaying the number of people concurrently streaming media in the "Party." *See*, *supra*, Fig. 8 (indicating 6 other users).

63.     The AmpMe App concurrently displays "one or more respective identifiers of the one or more other users determined to be within the selectable geographic area, along with an indication that the one or more other users are within the selectable geographic area." *See*, *supra*, Fig. 8 (the usernames and profile pictures of other users in the party).

64.     Further, the AmpMe App uses the users' device's location data in order to detect

---

[16] https://whatsyourtech.ca/2019/02/11/canadian-developers-amped-over-music-sync-app/
[17] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                          **Page 15**

other nearby devices and/or share the Party's location with other users of the Application. The AmpMe App uses a geographic area e.g., a "rough geo-location" or "course location" that may be selected or may also be disabled or turned off by the user. *See*, *supra*, Fig. 6.

65.     Furthermore, users may also select various communication modes using Wi-Fi, Bluetooth, and NFC which define geographic areas. *See*, *supra*, Fig. 7.

66.     A user selecting which broadcast feed (i.e., "party") to join and watch from the AmpMe App causes a signal from the centralized server to be transmitted to a second user.

67.     Multiple "changeable identifier[s] of the user of the mobile device, provided by the user of the mobile device" are shown in Figure 8 in the form of the usernames (e.g. "noelani_tsunami") and corresponding profile pictures.

68.     As seen in Figure 8, the AmpMe App shows when a user joined a party by displaying the user's username and photo, i.e., "causing a centralized server to transmit a signal to the second user to display to the second user a changeable identifier of the user of the mobile device after the user of the mobile device selects to experience the media being experienced by the second user."

69.     The AmpMe App provides that a user may stream a user generated list of media (e.g., music) and other users join a selected live broadcast synchronized in real time,[18] i.e., "the respective media is experienced such that the respective media is synchronized in real time with the respective media experienced by the second user."

70.     Defendant's infringing activities were and are without authority or license under the '180 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '180 Patent

---

[18] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788; https://www.ampme.com/faq ("Play your music in perfect sync across multiple devices"); https://www.ampme.com/terms ("the App on your device synchronizes with devices of other AmpMe users").

under at least 35 U.S.C. § 271(a) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the Accused Products without authority.

**B.      Vicarious and Induced Infringement**

71.      Defendant had actual knowledge of infringement as of July 9, 2021 when Plaintiff sent a copy of the '180 Patent along with claim charts and cited references detailing Defendant's infringement to Martin-Luc Archambault CEO of Amp Me to Amp Me's place of business at 1260 Boulevard Robert-Bourassa West Suite 300 Montreal, Quebec, H3B 3B9, Canada and via both registered mail and email at martin-luc@ampme.com.

72.      Further, the service of this Complaint, detailing Defendant's infringement of the '180 Patent in conjunction with the references cited, constitutes actual knowledge of infringement as alleged here.

73.      Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '180 Patent. On information and belief, Defendant has also continued to sell the Accused Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '180 Patent. *See* above (extensively demonstrating how Defendant directs end users to commit patent infringement).

74.      Further, to the extent that Defendant has assigned performance of these steps to third parties, such as its customers, agents or contractors, the third parties act vicariously as agents of the Defendant, or form a joint enterprise with Defendant, to infringe at least Claim 1 of the '180 Patent.  Alternatively, the Defendant contracts with the third parties to perform the infringing steps. Defendant profits vicariously from third party infringement, condition the third parties' participation and receipt of benefits of the AmpMe App on the performance on the infringing

activity and further establish the respective timing and manner of the third parties' performance of the infringing activity.

75. Defendant's infringing activities were without authority or license under the '180 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '180 Patent under at least 35 U.S.C. § 271(b) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the AmpMe App without authority.

## COUNT III: INFRINGEMENT OF THE '022 PATENT

76. Ascension realleges and incorporates by reference the allegations set forth above as if set forth verbatim herein.

### A.    Direct Infringement

77. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's AmpMe App or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '022 Patent.

78. Defendant operates the Internet site https://www.ampme.com/ ("Amp Me Site"). The Amp Me Site is targeted to and accessible to Texas residents.

79. Defendant offers to its customers mobile applications, for example, mobile applications available on Android and iPhone products (i.e., the AmpMe App). The AmpMe App is targeted to and accessible to Texas residents. *See*, *supra*, Fig. 1.

80. Upon information and belief, Defendant has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '022 Patent by making, using, selling, offering for sale, importing and/or licensing in the United States without authority systems, products, and methods claimed by the '022 Patent, to wit, the AmpMe App.

81. Upon information and belief, and as one illustration without limitation, Defendant

infringes Claim 1 of the '022 Patent in the exemplary manners described below.

82.    Defendant's AmpMe App and services (e.g., Amp Me's "VIP Services"), use a method of echoing media via a mobile device that allows "users to amplify the sound of their music by connecting several devices . . . to play the same music at the same time."   In particular, the AmpMe App is operable across several mobile device platforms (including both Apple iOS and Android platforms) allowing a user to either create a digital content streaming "Party" or to choose to join another user's "Party" and to echo (i.e., synchronize or "sync up") the audio of their respective devices. *See*, *supra*, Fig. 2.

83.    The AmpMe App and services "display[] to a user, on a mobile device, one or more geographic locations and respective identifiers of one or more other users experiencing respective media within a geographic area, wherein the geographic area is automatically determined based on a set radius from the mobile device."   *See*, *supra*, Fig. 8 (showing one or more geographic locations and respective identifiers of one or more other users) and Figs 9-10 below (showing geographic area for "Parties Near You" is automatically determined based on a set radius from the mobile device).



**Figure 9**



**Figure 10[19]**

84.     AmpMe uses a processor to control distribution of the content stream such that another user can watch a broadcast.  The AmpMe App's broadcast feature requires centralized network control, such as a server, to control distribution of the content stream.  The App or web client interfaces to the server to request joining a "party" broadcast.

85.     Figure 8 shows a user broadcasting live. A user selecting which broadcast feed (i.e., "party") to join and watch from the AmpMe App causes a signal from a processor in a centralized server to be transmitted to a second user.

86.     As seen in Figure 8, the AmpMe App shows when a user joined a party by displaying the user's username and photo, i.e., "causing a processor to transmit a signal to a second user to display to the second user a changeable identifier of the user of the mobile device after the user of the mobile device selects to experience the media being experienced by the second user."

87.     The AmpMe App provides that a user may stream a user generated list of media (e.g., music) and other users join a selected live broadcast synchronized in real time,[20] i.e., "the respective media is experienced such that the respective media is synchronized in real time with

---

[19] Screenshots for Figures 9 and 10 taken from Version 9.1.9 of the iOS version of the AmpMe App.
[20] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788; https://www.ampme.com/faq ("Play your music in perfect sync across multiple devices"); https://www.ampme.com/terms ("the App on your device synchronizes with devices of other AmpMe users").

the respective media experienced by the second user."

88.     Defendant's infringing activities were and are without authority or license under the '022 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '022 Patent under at least 35 U.S.C. § 271(a) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the Accused Products without authority.

**B.     Vicarious and Induced Infringement**

89.     Defendant had actual knowledge of infringement as of July 9, 2021 when Plaintiff sent a copy of the '022 Patent along with claim charts and cited references detailing Defendant's infringement to Martin-Luc Archambault CEO of Amp Me to Amp Me's place of business at 1260 Boulevard Robert-Bourassa West Suite 300 Montreal, Quebec, H3B 3B9, Canada and via both registered mail and email at martin-luc@ampme.com.

90.     Further, the service of this Complaint, detailing Defendant's infringement of the '022 Patent in conjunction with the references cited, constitutes actual knowledge of infringement as alleged here.

91.     Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '022 Patent. On information and belief, Defendant has also continued to sell the Accused Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '022 Patent. *See* above (extensively demonstrating how Defendant directs end users to commit patent infringement).

92.     Further, to the extent that Defendant has assigned performance of these steps to third parties, such as its customers, agents or contractors, the third parties act vicariously as agents of the Defendant, or form a joint enterprise with Defendant, to infringe at least Claim 1 of the '022

Patent. Alternatively, the Defendant contracts with the third parties to perform the infringing steps. Defendant profits vicariously from third party infringement, condition the third parties' participation and receipt of benefits of the AmpMe App on the performance on the infringing activity and further establish the respective timing and manner of the third parties' performance of the infringing activity.

93.     Defendant's infringing activities were without authority or license under the '022 Patent. Thus, Defendant has, and continue to infringe at least Claim 1 of the '022 Patent under at least 35 U.S.C. § 271(b) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the AmpMe App without authority.

## COUNT IV: INFRINGEMENT OF THE '530 PATENT

94.     Ascension realleges and incorporates by reference the allegations set forth above as if set forth verbatim herein.

### A.     Direct Infringement

95.     Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's AmpMe App or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '530 Patent.

96.     Defendant operates the Internet site https://www.ampme.com/ ("Amp Me Site"). The Amp Me Site is targeted to and accessible to Texas residents.

97.     Defendant offers to its customers mobile applications, for example, mobile applications available on Android and iPhone products (i.e., the AmpMe App). The AmpMe App is targeted to and accessible to Texas residents. *See*, *supra*, Fig. 1.

98.     Upon information and belief, Defendant has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '530 Patent

by making, using, selling, offering for sale, importing and/or licensing in the United States without authority systems, products, and methods claimed by the '530 Patent, to wit, the AmpMe App.

99.     Upon information and belief, and as one illustration without limitation, Defendant infringes Claim 1 of the '530 Patent in the exemplary manners described below.

100.    Defendant's AmpMe App and services (e.g., Amp Me's "VIP Services"), use a method of echoing media via a mobile device that allows "users to amplify the sound of their music by connecting several devices . . . to play the same music at the same time."  In particular, the AmpMe App is operable across several mobile device platforms (including both Apple iOS and Android platforms) allowing a user to either create a digital content streaming "Party" or to choose to join another user's "Party" and to echo (i.e., synchronize or "sync up") the audio of their respective devices. *See*, *supra*, Fig. 2.

101.    The AmpMe App and services "display[] to a user, on a mobile device, an indication of whether one or more other users having respective identifiers are experiencing respective media within a selectable geographic area." *See*, *supra*, Fig. 5. For instance, Figure 5 shows a screenshot of the AmpMe App displaying "Global Live Parties" and "Nearby Parties" that display other users with their associated identifiers in the form of usernames and profile pictures.

102.    The AmpMe App and services also "display[] automatically to the user at least one experience identifier corresponding, respectively, to at least one of the one or more other users, wherein the experience identifier is alterable at least in part when one experiences respective media in real time while any of the respective at least one of the one or more other users currently experiences the respective media," in the form of an icon that displays the number of people concurrently streaming media in the "Party." *See*, *supra*, Fig. 8 (indicating 6 other users).

103.    The experience identifier is "displayed concurrently with the at least one respective

identifier of the at least one or more other users determined to be within the selectable geographic area." *See*, *supra*, Fig. 8 (the usernames and profile pictures of other users in the party).

104.    The AmpMe App "allow[s] the user to select whether to experience one or more of the respective media on the mobile device" by choosing to join a Party.

105.    AmpMe uses a processor to control distribution of the content stream such that another user can watch a broadcast.  The AmpMe App's broadcast feature requires centralized network control, such as a server, to control distribution of the content stream.  The App or web client interfaces to the server to request joining a "party" broadcast.

106.    Figure 8 shows a user broadcasting live. A user selecting which broadcast feed (i.e., "party") to join and watch from the AmpMe App causes a signal from a processor in a centralized server to be transmitted to a second user.

107.    As seen in Figure 8, the AmpMe App shows when a user joined a party by displaying the user's username and photo, i.e., "causing a processor to transmit a signal to a second user to display to the second user a changeable identifier of the user of the mobile device after the user of the mobile device selects to experience the media being experienced by the second user."

108.    The AmpMe App provides that a user may stream a user generated list of media (e.g., music) and other users join a selected live broadcast synchronized in real time,[21] i.e., "the respective media is experienced such that the respective media is synchronized in real time with the respective media experienced by the second user."

109.    Defendant's infringing activities were and are without authority or license under the '530 Patent.  Thus, Defendant has, and continues to infringe at least Claim 1 of the '530 Patent

---

[21] https://www.lifewire.com/how-to-connect-multiple-bluetooth-speakers-4173788; https://www.ampme.com/faq ("Play your music in perfect sync across multiple devices"); https://www.ampme.com/terms ("the App on your device synchronizes with devices of other AmpMe users").

under at least 35 U.S.C. § 271(a) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the Accused Products without authority.

**B.    Vicarious and Induced Infringement**

110.    Defendant had actual knowledge of infringement as of July 9, 2021 when Plaintiff sent a copy of the '530 Patent to Martin-Luc Archambault CEO of Amp Me to Amp Me's place of business at 1260 Boulevard Robert-Bourassa West Suite 300 Montreal, Quebec, H3B 3B9, Canada and via both registered mail and email at martin-luc@ampme.com.

111.    Further, the service of this Complaint, detailing Defendant's infringement of the '530 Patent in conjunction with the references cited, constitutes actual knowledge of infringement as alleged here.

112.    Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '530 Patent. On information and belief, Defendant has also continued to sell the Accused Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '530 Patent. *See* above (extensively demonstrating how Defendant directs end users to commit patent infringement).

113.    Furthermore, to the extent that Defendant has assigned performance of these steps to third parties, such as its customers, agents or contractors, the third parties act vicariously as agents of the Defendant, or form a joint enterprise with Defendant, to infringe at least Claim 1 of the '530 Patent.  Alternatively, the Defendant contracts with the third parties to perform the infringing steps.  Defendant profits vicariously from third party infringement, condition the third parties' participation and receipt of benefits of the AmpMe App on the performance on the infringing activity and further establish the respective timing and manner of the third parties'

performance of the infringing activity.

114.    Defendant's infringing activities were without authority or license under the '530 Patent.  Thus, Defendant has, and continue to infringe at least Claim 1 of the '530 Patent under at least 35 U.S.C. § 271(b) by its continued use, testing, manufacture, sale, offer for sale, licensing, and/or importation of the AmpMe App without authority.

## JURY DEMAND

115.    Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER

For the reasons above, Plaintiffs respectfully requests that the Court find in its favor and against Defendant, and the Court grant Plaintiff the following relief:

a.    An adjudication that Defendant has directly infringed the Asserted Patents, either literally and/or under the doctrine of equivalents;

b.    An adjudication that Defendant has induced infringement of the Asserted Patents, either literally and/or under the doctrine of equivalents;

c.    A judgment that Ascension be awarded damages adequate to compensate it for Defendant's past infringement of the Asserted Patents, and for any continuing and future infringements, but in no event less than a reasonable royalty, and including pre-judgment and post-judgment interest costs and disbursements as justified under 35 U.S.C. § 284 and an accounting;

d.    That the Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

e.    Any further relief that this Court deems just and proper.

Dated: August 16, 2021                    Respectfully submitted,

                                          **PLATT CHEEMA RICHMOND PLLC**

                                          */s/ Matthew C. Acosta*
                                          Matthew C. Acosta
                                          Texas Bar No. 24062577
                                          macosta@pcrfirm.com
                                          Andrew Lin
                                          Texas Bar. No. 24092702
                                          alin@pcrfirm.com
                                          Nicholas C. Kliewer
                                          Texas Bar No. 24083315
                                          nkliewer@pcrfirm.com
                                          1201 N. Riverfront Blvd., Suite 150
                                          Dallas, Texas 75207
                                          214.559.2700 Main
                                          214.559.4390 Fax

                                          **COUNSEL FOR PLAINTIFF**